**Efrain Avila YANEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–04–327–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Feb. 16, 2006.

Rehearing & Supplemental Rehearing
Overruled Aug. 31, 2006.

Derek M. Harkrider, Edinburg, Joseph A. Connors, III, McAllen, for appellant.

Rene A. Guerra, Crim. Dist. Atty., Theodore C. Hake, Asst. Crim. Dist. Atty., Amy Howell Alaniz, Asst. Dist. Atty., Edinburg, for state.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

A jury convicted appellant Efrain Yanez of capital murder of a child and attempted murder of the child's mother and stepfather.[1] The trial court assessed the automatic life sentence on the capital murder offense, and a jury assessed punishment at a life sentence on the second count, after finding the enhancement allegation true. The trial court ordered both sentences to run concurrently in the Institutional Division of the Texas Department of Criminal Justice. By four issues, Yanez asserts that the trial court reversibly erred by (1) denying a pretrial hearing on his motion to testify free from impeachment, (2) admitting evidence, (3) disallowing prior conviction impeachment evidence of one of the

victims, and (4) denying a lesser included offense jury instruction on the capital murder charge. We affirm.

## I. BACKGROUND

### A. Relevant Facts

Alleging capital murder, Count 1 of the indictment states Yanez intentionally and knowingly caused the death of Klarissa Danielle Duran, a child younger than six years of age, by shooting her with a firearm, enhanced. Alleging attempted capital murder, Count 2 states that Yanez intentionally and knowingly attempted to kill Roberto Duran and Romelia Palomo, also enhanced. Palomo and Yanez had a minor son, Junior, who was thirteen years old at the time in question. A divorce granted Yanez standard visitation rights. Palomo married Duran. Klarissa was their child.

On May 28, 2003, Yanez called Palomo to request visitation with Junior. Palomo denied the request because the family was on the way to visit a relative who had a baby at a nearby hospital. A few minutes later, Yanez arrived at the house in a 1996 black Kia Sephia, requested to see his son, and accused Palomo of distancing Junior from Yanez. Junior visited with Yanez outside the residence until the family was ready to leave. On her way to the family car, Palomo asked Junior to visit with Yanez the following day. Duran sat in the driver's seat, Palomo sat in the front passenger seat, and Klarissa sat in the rear passenger seat. Junior sat in the back seat with his step-sister Klarissa, and closed the door. Meanwhile, through his rear view mirror, Duran saw Yanez approach the driver's side of the vehicle. Duran rolled down his window. Duran testified that the next and last thing he

1. See TEX. PEN. CODE ANN. § 19.03 (Vernon Supp.2005).

saw before Yanez shot him in the face was the barrel of a gun.

Palomo testified that she saw Yanez approach the driver side window, heard the first shots, and then felt pain in her leg. She got out of the car and saw Yanez open the back door of the car. Junior had left the car. Palomo saw Yanez hold the gun and aim it into the back seat of the car. Palomo heard the gun click twice indicating to her that the gun was out of bullets. She attempted to move around the back of the car while pleading with Yanez not to hurt her daughter who was still in the back seat. Palomo saw Yanez reload the gun. Yanez walked toward Palomo and shot her again in the leg. She fell to the ground. She next saw Yanez place half his body in the vehicle and shoot twice into the back seat of the car. Without saying a word, Yanez went back to his vehicle and fled the scene. A neighbor, observing the shooter from the top of a roof, testified he saw the shooter enter the car halfway and then the neighbor heard two shots fired. Four years old at the time of her death, Klarissa died as the result of two gunshot wounds to the head. Yanez was eventually apprehended and pled not guilty to the charges.

## B. Relevant Procedural History

The defense filed numerous pre-trial motions, including (1) a motion to suppress the evidence that was found in the glove compartment of the Kia, (2) a motion for a pretrial hearing to testify free of impeachment,[2] and (3) a motion to impeach the credibility of a potential witness, the victim Roberto Duran, with prior convictions. The trial court deferred ruling on the merits of the motion to testify free of impeachment. At trial, the defense objected at the time the State introduced the glove compartment evidence. Prior to cross-examination of Duran, the trial court revisited the State's motion in limine as to impeachment evidence of Duran's prior felony convictions. At a hearing outside the presence of the jury, the trial court ruled that, because Duran's most recent conviction and incarceration were more then ten years prior to the date of the offense, Yanez could not use Duran's felony convictions to impeach him.

During the charge conference, the defense requested a manslaughter instruction, arguing that the lesser charge of manslaughter was supported by the evidence and would provide the jury with the range of mental states defined in the penal code. The trial court denied the request. After the jury's guilty verdict, the trial court entered the judgments of conviction and sentence on the two counts. The trial court denied Yanez's motion for new trial. This appeal ensued.

## II. MOTION FOR RULE 609 PRETRIAL HEARING

By his first issue, Yanez asserts that the trial court committed reversible error by denying a pretrial hearing on his rule 609(a) motion to testify free from impeachment through prior convictions.[3] He

---

2. Yanez had previously been convicted of the felony offense of aggravated assault of a peace officer.

3. Rule 609(a) of the Texas Rules of Evidence states:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party. Tex. R. Evid. 609(a).

maintains that article 28.01 of the Texas Code of Criminal Procedure and *Theus v. State*, 845 S.W.2d 874 (Tex.Crim.App. 1992), required the trial court to provide him a pretrial opportunity to contest the use of such evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 28.01 (Vernon 1989). The State responds that the trial court did not err by deferring a ruling on the motion pending trial proceedings and Yanez did not preserve error by not obtaining an adverse ruling at trial.

## A. The Record

By his motion, Yanez sought, in part, a preliminary determination that impeachment evidence of his prior convictions was more prejudicial than probative. He sought an opportunity, pretrial, to contest the objectionable evidence on grounds that rule 609(f) [4] and *Theus* afforded him the right to contest the State's use of such evidence. Yanez presented his request to the trial court for a pretrial hearing during a pretrial conference. The trial court deferred a ruling. By not granting the pretrial hearing requested, the trial court implicitly denied his motion. TEX. R. APP. P. 33.1(a)(2). [5] The question before us is whether the implicit denial of a pretrial hearing to contest the State's impeachment evidence constitutes reversible error.

## B. Standard of Review

We review a ruling on the denial of a pretrial hearing on an evidentiary

motion for abuse of discretion. *See Cox v. State*, 843 S.W.2d 750, 752 (Tex.App.El Paso 1992, pet. ref'd) (holding, in the context of a motion to suppress, that the decision of whether or not to conduct a pretrial hearing on a motion to challenge the admissibility of evidence rests within the sound discretion of the trial court). Such discretion permits trial courts, upon proper objection, to elect to determine the admissibility of the challenged evidence during the trial on the merits. *Id.* An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (en banc). In other words, an abuse of discretion occurs only when the trial court's decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* at 391. Still, we need not reverse if we determine that the error did not affect appellant's substantial rights. TEX. R. APP. P. 44.2(b). In other words, we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim. App.1998); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Furthermore, if we can uphold the trial court's decision on any theory applicable to the case, we will

---

4. Rule 609(f) of the rules of evidence states: (f) Notice. Evidence of a conviction is not admissible if after timely written request by the adverse party specifying the witness or witnesses, the proponent fails to give to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence. TEX. R. EVID. 609(f).

5. Texas Rule of Appellate Procedure 33 governs the preservation of appellate complaints.

TEX. R. APP. P. 33.1. To preserve error for appellate review under Rule 33.1(a), the record must show that the complaining party made a timely and specific request, objection, or motion, and the trial court expressly or implicitly (1) ruled on the request, objection, or motion or (2) refused to rule and the complaining party objected to that refusal. *Id.; see Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim.App.2003).

do so. *Metts v. State*, 22 S.W.3d 544, 550 (Tex.App.-Fort Worth 2000, pet. ref'd).

## C. Discussion

### 1. Denial of a Pretrial Hearing

■ Specifically, in his motion, Yanez requested that the trial court "conduct an evidentiary hearing to determine the admissibility of impeachment evidence" before trial on the merits. In effect, he requested that the trial court convene a pretrial evidentiary hearing, conduct a rule 609 balancing test, and rule on the impeachment evidence. In substance, his motion constituted a motion to suppress impeachment evidence of prior convictions, on grounds that the evidence was more prejudicial than probative, after a rule 609 balancing test pretrial. *See* TEX.CODE CRIM. PROC. ANN. art. 28.01,—1(6) (Vernon 1989); TEX. R. EVID. 103; *see also Hill v. State*, 643 S.W.2d 417, 419 (Tex.App.Houston [14th Dist.] 1982), *aff'd*, 641 S.W.2d 543 (Tex.Crim.App.1982)(citing *Galitz v. State*, 617 S.W.2d 949, 952 n. 10 (Tex.Crim.App. 1981) (holding that a motion to suppress is a specialized objection regarding the admissibility of evidence)).[6] Article 28.01 is not mandatory upon the trial court but is directed to the court's discretion. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim.App.1988). The court may elect to determine the merits of the motion at the time when the subject matter of the motion is first brought before the court during trial, rather than at a pre-trial hearing. *Id.* at 649; *Bell v. State*, 442 S.W.2d 716, 719 (Tex.Crim.App.1969). Further, a de-

termination on the admissibility of evidence is to be made by the trial court alone. Neither the Court of Criminal Appeals nor the Legislature has mandated that a trial court must, as a matter of course, make such a determination prior to trial on the merits. Yanez's reliance on *Theus* for the proposition that the trial court reversibly erred in denying a hearing on his pretrial motion is of no moment because it does not mandate a pretrial hearing; rather, *Theus* instructs as to when prior convictions are admissible for impeachment purposes. *Theus*, 845 S.W.2d at 874.

Similarly, rule 609 of the rules of evidence requires that the trial court determine whether the probative value of admitting evidence of prior convictions outweighs its prejudicial effect to a party. TEX. R. EVID. 609(a). Rule 609(f), which Yanez cites, requires timely notice of the State's intended use of evidence of prior convictions to provide the defendant "a fair opportunity to contest the use of such evidence." TEX. R. EVID. 609(f). The phrase "fair opportunity" does not specify at what point in the proceedings the decision as to admissibility is to be made. We find no authority, and Yanez does not direct us to any, holding that a "fair opportunity" means an opportunity exclusively during a pretrial hearing and not during a hearing outside the presence of the jury during a trial on the merits. *See* TEX. R. EVID. 103(c); *Calloway*, 743 S.W.2d at 649; *Bell*, 442 S.W.2d at 719. By its

---

**6.** Even if we construed that the motion is one in limine, which the trial court could have done, a ruling on such a motion preserves nothing for appellate review. *Gonzales v. State*, 685 S.W.2d 47, 50–51 (Tex.Crim.App. 1985) ("Reliance on a motion in limine will not preserve error; any remedy available with regard to a violation of a motion in limine is with the trial court."). A defendant must object on the proper grounds when the evidence is offered at trial. *Benavides v. State*, 763 S.W.2d 587, 590 (Tex.App.-Corpus Christi 1988, pet. ref'd) (citing *Cook v. State*, 741 S.W.2d 928, 939 (Tex.Crim.App.1987); *Romo v. State*, 577 S.W.2d 251, 252 (Tex.Crim.App. 1979); *Witherspoon v. State*, 486 S.W.2d 953, 955–56 (Tex.Crim.App.1972)).

implicit ruling, the trial court elected to determine the admissibility of the evidence during the trial and, indeed, offered to revisit the matter during trial. A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391. In that regard, we conclude that the trial court did not abuse its discretion in failing to conduct a pretrial hearing to determine the admissibility of impeachment evidence.[7] *Calloway*, 743 S.W.2d at 649; *Bell*, 442 S.W.2d at 719.

### 2. Harm

▆▆▆▆ Even assuming error, the record does not establish harm. TEX. R. APP. P. 44.2; TEX. R. EVID. 103(d); *Kombudo v. State*, 171 S.W.3d 888 (Tex.Crim.App.2005) (compelling an appellate court to address "even an alternative argument in an appellee's reply"). Any "error, defect, irregularity, or variance" other than constitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected "when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex.Crim.App.2005) (citing *Rus-*

*sell v. State*, 155 S.W.3d 176, 179 (Tex. Crim.App.2005)); *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App.2000); *accord, King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). In evaluating harm, the appellate court should consider everything in the record.[8] *Rich*, 160 S.W.3d at 577; *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex.Crim.App.2003). It is the responsibility of the appellate court to assess harm after reviewing the record, and the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on the appellant or the State. *Johnson v. State*, 43 S.W.3d 1, 5 (Tex.Crim.App.2001).

▆▆▆▆ Yanez did not inform the trial court, either during the pretrial conference or during trial, that he would testify. Because Yanez elected not to testify, by definition, the State could not use his prior conviction for impeachment and the jury was not exposed to the allegedly prejudicial evidence. Yanez, however, contends that the trial court's ruling in effect prevented him from testifying, for fear of the State's expected use of the prior conviction for impeachment. On this rationale, all rulings on evidentiary motions would have some effect on the defendant's trial strategy. *Benavides v. State*, 763 S.W.2d 587, 590 (Tex.App.-Corpus Christi 1988, pet.

---

7. We find additional support in concluding the trial court did not abuse its discretion by its preliminary ruling. *Theus* imposes that, when the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's credibility and testimony escalates. *Theus v. State*, 845 S.W.2d 874, 881 (Tex.Crim.App.1992). "As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility." *Id.* (citation omitted).

8. We consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error and how it might be

considered in connection with other evidence in the case, the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments, and voir dire if material to appellant's claim. *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000). We also consider overwhelming evidence of guilt, but that is only one factor in our harm analysis. *Motilla v. State*, 78 S.W.3d 352, 356–58 (Tex.Crim.App.2002). Further, we are "obligated to examine the entire record in a neutral, impartial and even-handed manner and not 'in the light most favorable to the prosecution.'" *Harris v. State*, 790 S.W.2d 568, 586 (Tex.Crim.App. 1989) (construing predecessor harmless error rule).

ref'd.). This effect, however, is too speculative to preserve error on the basis of the ruling alone. *Id.* (citing *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *Richardson v. State,* 733 S.W.2d 947, 956 (Tex.App.-Austin 1987), *vacated on other grounds,* 761 S.W.2d 19 (Tex.Crim.App.1988)). To raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify because without his testimony there can be no impeachment evidence on prior convictions. *See* TEX. R. EVID. 103(c); *see also Benavides,* 763 S.W.2d at 590. An accused cannot refuse to adduce evidence in anticipation of improper impeachment and then secure a reversal on grounds that he was denied the opportunity to contest impeachment evidence. *Id.* Unless the defendant testifies, it is a matter of conjecture whether the trial court would have allowed the State to attack his credibility at trial by means of the prior conviction. *Id.* To analyze the trial court's weighing of a prior conviction's probative value against its prejudicial effect, as required by rule 609(a)(1), the reviewing court must know the precise nature of the defendant's testimony. *Id.* (citing *Luce,* 469 U.S. at 41, 105 S.Ct. 460). Because Yanez did not testify, the impact any erroneous impeachment may have had in light of the record as a whole is not affirmatively demonstrated in the appellate record. *Id.* Thus, any possible harm flowing from a trial court's refusal to conduct a pretrial hearing on impeachment by a prior conviction is wholly speculative. *Id.* The record does not show the reason for Yanez's failure to testify. Furthermore, the record includes eyewitness testimony by victims of the offense. Yanez has not shown harm.

We conclude that the trial court's implicit denial of Yanez's motion for a pretrial hearing on his rule 609 motion is neither an abuse of discretion nor reversible error. We overrule Yanez's first issue.

## III. MOTION TO IMPEACH WITNESS WITH PRIOR CONVICTIONS

Because Yanez's third issue is also based on rule of evidence 609, we address it next. Yanez asserts that the trial court reversibly erred by disallowing impeachment of victim Roberto Duran through his prior felony convictions. He asserts that the trial court erroneously ruled that more than ten years had passed since Duran's release from confinement and did not perform the balancing test as required by rule 609(b), and, alternatively, the probative value of the impeachment evidence substantially outweighs its prejudicial effect. The State responds that the trial court did not err in its determination that Duran's convictions and release date exceeded the ten year limitation for purposes of admission of impeachment evidence under rule 609(b).[9] TEX. R. EVID. 609(b). The State further responds that Yanez abandoned his alternative claim that the probative value outweighs the prejudicial effect.

### A. The Record

The State filed a motion in limine requesting that the defense approach the bench before addressing Duran's convic-

---

9. Rule 609(b)states:

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

TEX. R. EVID. 609(b).

tions and extraneous offenses. During the pretrial conference, Yanez requested permission to impeach Duran with prior felony convictions. After commenting that probative value was not evident, the trial court granted the State's motion in limine. During the trial, Yanez renewed his request to use Duran's prior felony convictions for impeachment. The trial court convened a hearing outside the presence of the jury. During cross-examination in that hearing, Duran admitted to three prior felony convictions. He was arrested for burglary of a habitation on September 23, 1985, pleaded guilty on February 28, 1986, and was sentenced to an eight-year prison term when probation was revoked for the subsequent offense. Duran was arrested on September 21, 1986, for burglary of a building, pleaded guilty on January 21, 1987, and was sentenced to an eight-year prison term that ran concurrently with the burglary of a habitation offense. He was released from prison on the burglary offenses in 1988[10] and, because of the attempted murder charge, his parole was revoked, and the original sentence was reinstated.

Duran was next arrested on October 30, 1988 for attempted murder. A jury convicted him of the lesser offense of aggravated assault. On July 3, 1989, he was sentenced to a ten-year prison term. He was released on parole in 1990 for the aggravated assault conviction, the most recent, having served less than a year in prison. Duran testified, "I did all my 10 years parole" on that conviction. Duran agreed that a document, which defense counsel showed him in court but was not admitted in evidence, demonstrated he was

paroled for the aggravated assault offense "until October 27, 1998."

Yanez renewed his request to impeach Duran on grounds that the rule 609(b) ten-year limitation did not preclude use of the prior felony convictions because both terms of confinement in prison would have extended to the year 1994. The trial court denied Yanez's oral motion and offered Yanez the opportunity to revisit the issue, should Yanez provide authority supporting his argument that the term "confinement" in rule 609(b) meant the "sentence" imposed and not prison time served. Yanez cross-examined Duran without additional request to allow impeachment with prior convictions.

### B. Standard and Scope of Review

We review a ruling that disallows use of a prior conviction to impeach a witness for a clear abuse of discretion. *See Theus*, 845 S.W.2d at 881; *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex.Crim.App. 2002) ("The admissibility of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." (citations omitted)). If the trial court's decision to admit a prior conviction lies outside the zone of reasonable disagreement, an appellate court should not hesitate to reverse the trial court's determination. *Id.* (citing *Montgomery*, 810 S.W.2d at 391). Even if the trial court gave the wrong reason for its decision, the decision will be upheld as long as it is correct on some theory of law applicable to the case. *Osbourn*, 92 S.W.3d at 538; *Salas v. State*, 629 S.W.2d 796, 799 (Tex. App.-Houston [14th Dist.] 1981). Even if there is no legal basis to support the ruling, the reviewing court must still disre-

---

**10.** Duran testified as follows in pertinent part:

Q: When were you released from confinement from the penitentiary for these two offenses?

A: I can't even remember.

Q: All right. Was it before October 30, 1988?

A: Yeah, it had to have been before 1988.

gard the error unless it affected the defendant's substantial rights. *See* Tex. R. App. P. 44.2(b).

 Because rule 609 is broad enough to encompass a defendant's impeachment of a State's witness with a prior conviction, any proponent seeking to introduce evidence pursuant to rule 609 has the burden of demonstrating that the probative value of a conviction outweighs its prejudicial effect. *Theus*, 845 S.W.2d at 880. Five factors are to be considered by the court in determining whether to admit the evidence of prior felony convictions: (1) impeachment value, (2) temporal proximity, (3) similarity, (4) probative versus prejudicial value, and (5) importance of testimony and credibility. *Id.*, 845 S.W.2d at 881–82.

### C. Applicable Law

Yanez maintains that the denial of the opportunity to cross-examine and attack the credibility of Roberto Duran with his prior convictions is reversible error. In general, rule 609(a) authorizes the use of felony convictions or crimes of moral turpitude for impeachment purposes if the trial court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party. Tex. R. Evid. 609(a). Rule 609(b) specifies that evidence of a conviction is not admissible if a period of more than ten years has elapsed since (1) the date of the conviction or (2) of the release of Duran from confinement imposed for that conviction, "whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Tex. R. Evid. 609(b).

### D. Discussion

#### 1. Remote Convictions

 The date of Yanez's offenses is May 28, 2003. The date of the trial is June 24, 2004. Rule 609(b) fixes the ten year limitation on "the date of the conviction or of the release from confinement." Tex. R. Evid. 609(b).

 The sole evidence before the trial court was that Duran was released from prison on the most recent felony offense in 1990 and successfully completed his ten-year parole term. The evidence establishes that more than ten years have elapsed since Duran's release from the confinement imposed for his convictions [11] and either the date of the offense or the date of trial. We conclude that the trial court did not abuse its discretion on grounds that the convictions were inadmissible as too remote in time under rule 609(b). Tex. R. Evid. 609(b); *see Montgomery*, 810 S.W.2d at 381. Yanez further asserts that he was reversibly denied the opportunity to impeach Duran on grounds that rule 609(b) of the rules of evidence provides that, even if the conviction occurred more than ten years ago, the interests of justice demanded that the trial court allow the requested impeachment. *See* Tex. R. Evid. 609(b). The trial court denied the motion because the last date of confinement was over ten years prior and Yanez had not presented sufficient proof that the nature of the prior felonies (two burglaries and one aggravated assault) were relevant to the facts or credibility of the witness. By its ruling, the trial court implicitly rejected the "interest of justice" exception in rule 609(b). As the proponent

11. Duran testified he served the remainder of the prison terms for the first two offenses concurrently with the most recent offense because his parole was revoked on grounds of his most recent offense.

seeking to introduce evidence pursuant to rule 609(b), Yanez had the burden of demonstrating that the probative value of a conviction outweighed its prejudicial effect. *Theus,* 845 S.W.2d at 880. He did not do so. In fact, during the evidentiary hearing convened outside the presence of the jury, he did not address the probative/prejudicial argument he advances on appeal and thus did not preserve error. *See* TEX. R. APP. P. 33.1. Even assuming he preserved error, we need not address Yanez's argument that the impeachment evidence was more probative than prejudicial under the *Theus* factors because the trial court's ruling is supported on the theory of remoteness as applicable by rule 609(b). *See Osbourn,* 92 S.W.3d at 538; *Salas,* 629 S.W.2d at 799; *see also* TEX. R. APP. P. 47.1.

### 2. Harm

■ ■ Even assuming error, we must disregard the error unless it affected Yanez's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Rich,* 160 S.W.3d at 577. Yanez asserts that, considering the entirety of Duran and Palomos' testimony, he was harmed because Duran was portrayed as, among other things, selfless, cooperative, and non-confrontational. However, Palomo also testified that Yanez involved law enforcement numerous times when effecting visitation with Junior due to the escalating tensions between Yanez and Palomo involving visitation.[12] On the date in question, Yanez arrived at the residence unan-

nounced and unaccompanied by law enforcement.

Regardless of whether the jury believed any of Duran's testimony, other testimony reveals that Yanez shot and killed four-year-old Klarissa, who was seated in the back seat of the family's vehicle, after he shot both Duran and Palomo. Therefore, even if the evidence of Duran's prior convictions were introduced and his credibility compromised, sufficient other evidence existed such that reasonable minds could convict Yanez. Such other evidence includes the eyewitness testimony of Palomo, who remained steadfast on her identification of Yanez as the shooter, and a neighbor, who from a roof top observed the shooter's actions. Yanez has not demonstrated that the impeachment or probative value of the prior conviction evidence would have any effect on all the other evidence presented at trial or provided proof that the credibility of Duran was essential to establish facts.

After considering the entire record, as we must, in evaluating harm, we cannot conclude that the complained-of error had a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Rich,* 160 S.W.3d at 577. We overrule Yanez's third issue.

### IV. ADMISSION OF EVIDENCE

By his second issue, Yanez asserts that the trial court reversibly erred by admitting as hearsay documents seized from his mother's vehicle pursuant to a search warrant. The State counters that the docu-

---

**12.** On cross-examination, Palomo testified as follows:

> Q: And you would agree with me that from May 2002 to May 2003 there was a great deal of problems regarding visitation; would you agree?
> A: There was problems, yes.

However, on redirect examination, Palomo testified:

> Q: Ms. Palomo, the court order that you had between yourself and your ex-husband, the Defendant, and [Junior], that court order did not in any way attribute any visitation or in any way affect Klarissa Danielle Duran, did it?
> A: It had nothing to do with my daughter.

ments were properly admitted because they were not offered for the truth of the matters asserted and thus were not hearsay.

### A. Standard of Review

 A trial court's admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002); *Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001); *Montgomery,* 810 S.W.2d at 379; *see also Coffin v. State,* 885 S.W.2d 140, 149 (Tex.Crim.App. 1994) (holding that a ruling on admissibility of an out-of-court statement under a hearsay exception is within the trial court's discretion, subject to review only for abuse of discretion).

### B. The Record

Palomo testified that the week before the shootings, while Yanez visited with Junior at the residence, she wrote down the license plate number of the vehicle Yanez operated out of an inexplicable concern that something might arise and it would be needed. Through photographs admitted in evidence, she identified the Kia as the vehicle Yanez drove to and from the crime scene. Sergeant Javier J. Castro testified that he was given an eyewitness description of the vehicle Yanez drove from the crime scene and its license plate number. Castro was instructed to go to the residence of Yanez's mother, Maria Antonia Avila–Yanez, to locate Yanez. Upon arrival at the residence of Avila–Yanez, Castro observed the Kia parked in the driveway and noticed the hood of the vehicle was hot to the touch. He testified that he knocked on the door, Avila–Yanez answered, and she permitted a search of the house for Yanez. Yanez was not there. The vehicle was impounded that day with Avila–Yanez's consent. Crime scene investigator Joel Castro testified that a search warrant was issued and executed on May 30, 2003. The vehicle was inventoried, and documents obtained from the glove compartment included (1) a worksheet from Yanez's workplace, (2) two receipts from motels, one in Yanez's name and the other in his mother's name, (3) a church bulletin, and (4) a paper with handwritten notes.

### C. Applicable Law

 Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d); *see also* TEX. R. EVID. 801(c). A "statement" is, in part, an oral or written verbal expression. TEX. R. EVID. 801(a). Statements that qualify as hearsay are inadmissible at trial unless an applicable exclusion applies. TEX. R. EVID. 802. A statement not offered to prove the truth of the matter asserted is not hearsay. *Dinkins v. State,* 894 S.W.2d 330, 347–48 (Tex.Crim.App.1995) (holding that an appointment book and patient application form were not hearsay when "tendered ... to show how appellant became a suspect in the investigation," not for the truth of the matter asserted); *see Jones v. State,* 843 S.W.2d 487, 499 (Tex. Crim.App.1992) (holding that statements offered for the purpose of explaining how a defendant became a suspect and not for the truth of the matter asserted are not hearsay testimony); *Cano v. State,* 3 S.W.3d 99, 110 (Tex.App.-Corpus Christi 1999, pet. ref'd) ("This is because the testimony assists the jury's understanding of the events by providing context for the police officer's actions.").

### D. Discussion

 The State maintains that the documents were not admitted to prove the

truth of the matters asserted but to show that Yanez had access to the vehicle. Ample evidence demonstrated that Yanez fled the crime scene in the Kia from which the documents were seized. The trial court could have reasonably concluded that the documents were received for the purpose of showing how the investigation focused on Yanez. Thus, the trial court could have reasonably concluded that the documents were not hearsay because they were not offered for the truth of the matters asserted but to show the circumstances surrounding the investigation and leading to Yanez's arrest. *See Cano*, 3 S.W.3d at 110. We conclude that the trial court's overruling the objection to exclude the documents as inadmissible hearsay was within the zone of reasonable disagreement and, thus, not an abuse of discretion. *Montgomery*, 810 S.W.2d at 379.

### E. Harm

■ Even assuming the evidence was inadmissible, we find no harm. Tex. R. App. P. 44.2(b). The admission of inadmissible hearsay constitutes non-constitutional error, and it will be considered harmless if the appellate court, after examining the record as a whole, is reasonably assured that the error did not influence the jury verdict or had but a slight effect. Tex. R. App. P. 44.2(b); *see Johnson*, 967 S.W.2d at 417; *Broderick v. State*, 35 S.W.3d 67, 74 (Tex.App.-Texarkana 2000, pet. ref'd).

Other than connecting Yanez to the vehicle, the documents contain nothing inherently harmful or prejudicial. Palomo's eyewitness identification of both Yanez as the shooter and the Kia as the getaway car lead us to conclude that admission of the complained-of evidence did not affect Yanez's substantial rights. Tex. R. App. P. 44.2(b); *Rich*, 160 S.W.3d at 577; *Motilla*

*v. State*, 78 S.W.3d 352, 355–56 (Tex.Crim. App.2002).

We overrule Yanez's second issue.

## V. LESSER INCLUDED OFFENSE

By his fourth issue, Yanez asserts that the trial court reversibly erred in denying his request for a jury charge instruction on the lesser included offense of manslaughter as to Count One, the capital murder charge. The State counters that there is no evidence supporting Yanez's theory that Klarissa was killed recklessly and, thus, the trial court properly denied the requested instruction.

### A. Scope and Standard of Review

■ We review a trial court's refusal to include a lesser included offense in the jury charge to see if there is some evidence establishing the lesser included offense. *See Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App.1998) (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim. App.1994)). We review all of the evidence presented at trial to determine if the trial court erred by failing to give a charge on a lesser included offense. *Rousseau*, 855 S.W.2d at 673. When reviewing whether a trial court erred by refusing to include an instruction on a lesser included offense in the jury charge, we do not address the weight and credibility of the defendant's version of events. *See Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992).

### B. Applicable Law

■ Article 37.09 of the Texas Code of Criminal Procedure provides, among other things, that an offense is a lesser-included offense if (1) it is established by proof of the same or less than all the facts required

to establish the commission of the offense charged, or (2) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission. TEX. CODE CRIM. PROC. Ann. art. 37.09(1), (4) (Vernon 1981). The test for submission of a jury charge requires that (1) the lesser included offense must be included within the proof necessary to establish the offense charged; and (2) some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense, or, in other words, the defendant is not guilty of the greater offense but is guilty of the lesser. *Pickens v. State*, 165 S.W.3d 675, 679 (Tex. Crim.App.2005) (citing *Hampton v. State*, 109 S.W.3d 437, 440 (Tex.Crim.App.2003); *Rousseau*, 855 S.W.2d at 672).

### C. Discussion

The trial court denied Yanez's request for a lesser included offense instruction on manslaughter. We will now undertake the two-part analysis.

### 1. Is manslaughter within the proof necessary to establish capital murder?

■ The first prong requires that a lesser included offense be included within the proof necessary to establish the offense charged. *Pickens*, 165 S.W.3d at 679. A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PEN. CODE ANN. § 19.04(a) (Vernon 2005). Involuntary manslaughter may be a lesser included offense of murder and consequently of capital murder. *Adanandus v. State*, 866 S.W.2d 210, 232 n. 21 (Tex.Crim.App.1993).

■ Because the requested charge is a lesser included offense of the offense charged, we conclude the first part of the test for determining whether a defendant is entitled to an instruction on a lesser

offense is satisfied. *See Pickens*, 165 S.W.3d at 679; *Hayward v. State*, 158 S.W.3d 476, 478 (Tex.Crim.App.2005). However, just because a lesser offense is included within the proof of the offense charged does not mean that a charge on the lesser offense is required. *Broussard v. State*, 642 S.W.2d 171, 173–74 (Tex. Crim.App.1982). The charge will be required only if there is evidence which shows that if the appellant is guilty, he is guilty only of the lesser offense. *Pickens*, 165 S.W.3d at 679; *see Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App.2000) (holding that the evidence must establish that the lesser included offense is a valid rational alternative to the charged offense). Thus, we turn to the second part of the test.

### 2. Is Yanez not guilty of capital murder but guilty of manslaughter?

■ The second prong acknowledges that there are factual circumstances in which an offense is indeed a lesser included offense under the first prong, but a jury-charge instruction will not be required because the condition that the defendant is not guilty of the greater offense but is guilty of the lesser is not met. *Pickens*, 165 S.W.3d at 679. In such a case, the offense remains a lesser included offense, but the trial court is not required to instruct the jury on it. *Id.* There are two ways the evidence may indicate that a defendant is guilty only of the lesser offense: (1) there may be evidence that refutes or negates other evidence establishing the greater offense; and (2) the evidence presented may be subject to different interpretations. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992). If evidence from any source raises the issue of a lesser included offense, a charge on that offense

must be included in the trial court's charge. *Id.* at 391. However, if a defendant either offers evidence that he committed no offense or presents no evidence, and there is no evidence showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required. *See Bignall,* 887 S.W.2d at 22–24.

Yanez asserts that a rational jury could have found that, if he was guilty of anything, he was only guilty of the lesser included offense of manslaughter. He directs us to testimony he claims demonstrates he acted recklessly and, thus, raises the issue of involuntary manslaughter. Thus, the factual dispute at the crux of this inquiry is whether Yanez caused the death intentionally or recklessly.

■■■ When a person recklessly causes the death of an individual, the offense is manslaughter. TEX. PEN. CODE ANN. § 19.04(a) (Vernon 2003). A person commits the offense of capital murder if he murders an individual under six years of age. TEX. PEN. CODE ANN. § 19.03(a)(8), § 19.02(b)(1) (Vernon 2005) (stating that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *See* TEX. PEN. CODE ANN. § 6.03(c) (Vernon 2003). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* The offense of manslaughter "involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it." *Stadt v. State,* 182 S.W.3d 360, 364 (Tex.

Crim.App.2005) (quoting *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975)).

The question before us is whether there was some evidence presented at Yanez's trial that would permit a rational jury to find that he possessed the culpable mental state of manslaughter recklessness rather than the culpable mental state of capital murder. We turn to the evidence.

■■■ Yanez asserts that the evidence was disputed as to whether he ever meant to harm Klarissa in any way. He contends that Klarissa was "inadvertently shot" while Yanez shot Duran and Palomo and, thus, a jury could have found he was only guilty of manslaughter. In support of his theory, Yanez espouses that (1) Palomo's eyewitness testimony was neither credible nor corroborated, (2) the neighbor's independent eyewitness account of the shooting was inconsistent and unreliable, (3) forensic evidence was either unavailable or essentially inconclusive and did not negate recklessness, and (4) Junior's testimony that he observed Yanez shoot once into the car while all family members occupied it. We do not address the weight and credibility of the defendant's version of events. *Saunders,* 840 S.W.2d at 391. However, we must consider Yanez's proffered evidence with the remainder of the evidence. *Rousseau,* 855 S.W.2d at 673.

■■■ Evidence showed that Yanez (1) had an escalating acrimonious relationship with Klarissa's mother Palomo as to visitation rights involving Klarissa's brother, Junior, (2) Yanez appeared at Klarissa's residence unannounced, (3) Palomo interrupted Yanez's visit with Junior so that the family could proceed to visit a relative as planned, (4) Klarissa's father Duran observed Yanez approaching him as Duran sat in the driver's seat and unsuspectingly lowered the car window, (5) Yanez shot Duran in the face, (6) Palomo sustained a bullet wound to her leg while seated in the

front passenger seat, (7) Klarissa sat near the middle of the back seat of the car, (8) Junior exited the vehicle, (9) Yanez aimed the gun toward the back seat and fired twice, (10) the gun was out of ammunition, (11) Palomo pleaded with Yanez not to hurt Klarissa, (12) Yanez loaded the gun with more bullets, (13) Yanez approached Palomo, who had exited the vehicle and approached him, and shot her leg, causing her to fall, (14) Yanez put half his body inside the car, (15) Yanez shot twice, (16) Klarissa sustained one bullet wound to the left side of her head and one below her left eye, (17) Klarissa was four years old and weighed approximately thirty pounds, (18) she had not attended the last day of school because she was sick, (19) Klarissa died as the result of massive injury to her head, (20) Duran, Palomo, Junior and Klarissa had been home less than an hour before the shooting occurred, and (21) of the persons present, Yanez was the sole person at the scene of the shooting with a loaded gun. The videotape of the crime scene admitted in evidence shows that the car had dark tint on the back seat windows. Testimony showed that Yanez opened the back door of the car and put half his body inside prior to shooting the child.

Intent may be inferred from the actions or conduct of the appellant. *McGee v. State*, 774 S.W.2d 229, 234 (Tex.Crim.App.1989).[13] Intent may also be ascertained or inferred from the means used and the wounds inflicted. *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App.

1981). Evidence showed the discord between Yanez and Palomo over visitation of Yanez with Junior. Already injured by a bullet, Palomo pleaded with Yanez that he not hurt Klarissa. Yanez's penultimate act was to shoot Palomo in the leg as she had neared him as he reloaded the gun. By shooting her leg, Yanez disabled Palomo, who while pleading he not hurt Klarissa was the only person who could arguably, albeit remotely, defend the child. Rather than leave the premises after shooting the child's parents, Yanez reloaded the gun and shot the child. Once he disabled Palomo, Yanez partially entered the car and shot the child. Given the number of wounds to the child and the proximity in which they were inflicted inside a car, a jury could reasonably infer that there was physical evidence showing an intent to kill. *See Womble*, 618 S.W.2d at 64.

We must decide whether there was some evidence presented at Yanez's trial that would permit a rational jury to find that he possessed the culpable mental state of recklessness rather than capital murder. In other words, there must be some evidence from which a rational jury could acquit Yanez of the greater offense while convicting him of the lesser included offense. *Feldman v. State*, 71 S.W.3d 738, 751 (Tex.Crim.App.2002). In order for a jury to rationally find Yanez guilty of involuntary manslaughter but not capital murder, the jury would have to disregard the evidence of such intent. Further, the jury would also have to disregard evidence

---

**13.** The jury may infer the requisite intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of the wounds inflicted on the victims. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App.1999) (J. Meyers concurring); *see Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App.2001). If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the

defendant intended to kill. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App. 1993); *see Bell v. State*, 501 S.W.2d 137, 138 (Tex.Crim.App.1973); *Guerrero v. State*, 655 S.W.2d 291, 292 (Tex.App.-Corpus Christi 1983, no pet.). In fact, where a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App. 1981).

showing that Yanez went to the family's residence unannounced, armed, and shot three victims seated in their car. We do not believe a rational jury would disregard such evidence and consider it not to be probative of Yanez's intent to murder the child. After reviewing the record, we conclude that the evidence Yanez advances, in addition to the other evidence, could lead a rational jury to conclude Yanez intended to murder the child.

Moreover, there is no evidence in the record that would permit a rational jury to find Yanez guilty only of manslaughter. When there is not enough evidence to raise an issue of reasonable doubt whether the defendant was acting other than intentionally and knowingly, then no issue on involuntary manslaughter should be given. *Zepeda v. State*, 797 S.W.2d 258, 265 (Tex.App.-Corpus Christi 1990, pet. ref'd.) (citing *Dowden v. State*, 758 S.W.2d 264, 271 (Tex.Crim.App.1988)). Established facts did not raise the issue of voluntary manslaughter. Yanez's theory that the child was "inadvertently shot" has no support in this record.

Accordingly, we conclude the second part of the test for determining whether a defendant is entitled to an instruction on a lesser offense is not satisfied. *See Rousseau*, 855 S.W.2d at 672. There is no evidence that if Yanez is guilty, he is guilty only of the lesser offense. *Id.* We further conclude the trial court did not err when it denied Yanez's request for the jury charge to include the lesser included offense of manslaughter. *Id.*; *Zepeda*, 797 S.W.2d at 265. We overrule Yanez's fourth issue.

## VI. CONCLUSION

Having overruled Yanez's four issues presented, we affirm the judgment.