

# NUMBER 13-12-00037-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**HORACE DEMPSEY,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 206th District Court
of Orange County, Texas[1].**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Rose Vela**

Appellant, Horace Dempsey, was convicted of attempted capital murder and was sentenced to forty years' confinement in the Texas Department of Criminal Justice, Institutional Division and assessed a $10,000 fine. By two issues, he urges on appeal

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, 2005).

that the trial court erred in admitting into evidence: (1) unduly prejudicial photographs and (2) hearsay testimony regarding the potential disposition of the victim's property in the event of her death. We affirm.

## I. BACKGROUND

Appellant, nineteen years old at the time of trial, was charged with the attempted capital murder of his grandmother, Sylvia Vaughns. Appellant, his girlfriend, Shawnee Bell, and their infant daughter were living with Ms. Vaughns at the time of the assault. Ms. Vaughns was discovered in her home by her estranged husband, Danae Vaughns, on April 4, 2011. She had been severely beaten and was found naked on the floor of her bedroom. According to Danae, neighbors became concerned because one of Ms. Vaughn's vehicles, a Crown Victoria, had been parked at a boat ramp near her home for a couple of days. Danae entered the home after receiving permission from Ms. Vaughns' sister, noted that there was blood everywhere, and found Ms. Vaughns unresponsive. The evidence showed that Ms. Vaughns had been beaten with a hammer, and she had suffered serious injuries.

Officer Robinson, of the Orange County Police Department, testified that video surveillance at the boat ramp showed that both of Ms. Vaughns' vehicles had been driven to the boat ramp on the day of the assault. The Crown Victoria remained at the boat ramp, while her Mustang was driven away. Sergeant Paul Arceneaux investigated the scene and testified that Ms. Vaughns' purse had been rummaged through and items were missing. In appellant's room, the officer found a pair of men's jersey style shorts with blood on them. He also found a note, which among other things, stated: "Its [sic] time

2

to kill my grandma."  Sergeant Arceneaux also noted blood on the door handle of the Crown Victoria found at the boat ramp.

Sergeant Sarah Jefferson-Simon, another investigating officer, testified that Ms. Vaughns' credit card had been used in Houston shortly after the assault had occurred. Appellant was caught on video using her credit card and he even signed his name on receipts.  Sergeant Jefferson-Simon testified that she learned that Ms. Vaughns had willed her property to appellant upon her death.   Ms. Vaughns, who testified at trial, said she never told or intended appellant to receive the property.  Ms. Vaughns had no recollection of what had happened to her with respect to the assault.   She had no idea who attacked her, but testified she had a good relationship with appellant.  Bell also indicated that appellant believed that if Ms. Vaughns passed away, appellant would get the property.   Appellant, however, testified that his grandmother never promised him her property when she died.

After leaving Houston, appellant and Bell eventually drove the Mustang to Florida, where both Bell's and appellant's mothers resided.   Appellant dropped Bell and the child off with Bell's mother, abandoned the Mustang, and went to Miami where he was later arrested at his mother's home.   At trial, Bell and appellant testified to differing scenarios with respect to what had occurred in Ms. Vaughns' home.   According to Bell, appellant planned to kill his grandmother.   He mentioned to Bell that he was going to hit his grandmother with a hammer and dump her body in Louisiana.   Bell testified that on the morning of the assault, she heard a sound like "bones breaking."  She went into her bedroom and closed the door.  She thought he was carrying out his plan.  Appellant

3

later told her when he left the house, he could hear Ms. Vaughns gasping.

Appellant, on the other hand, testified that he had a good relationship with his grandmother. Others also testified that appellant got along well with his grandmother, but Bell did not. Appellant stated that on the night of the assault, he drank a full bottle of some liquor and took a few OxyContin pills. The next thing he remembered was waking up on the bathroom floor. Bell was gone and he saw a bloody hammer and knew something was wrong. He saw his grandmother and thought she was dead. He took the baby and left. Appellant met up with Bell and asked her if she had done it. He didn't tell the police because he loved Bell. Bell was not charged.

The officers took numerous photos of the crime scene, including photos of Ms. Vaughns after she had been life-flighted to a Galveston hospital. The photos were objected to on the basis that they were more prejudicial than probative.

## II. DISCUSSION

### A. Admission of Photographs

By appellant's first issue, he argues that the trial court committed reversible error in admitting into evidence eighteen color photographs depicting the areas of Ms. Vaughns' home where the attack took place and six color photographs of Ms. Vaughns depicting her condition after the attack. The photographs before us are in black and white.

### 1. Standard of Review and Applicable Law

Appellant's objection to the admission of the photographs was that they were more prejudicial than probative. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or

4

less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence may be excluded by the trial court under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Andrade v. State*, 246 S.W.3d 217, 227 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

In conducting a Rule 403 analysis, a trial court must balance, (1) the inherent probative force of the proffered item of evidence along with, (2) the proponent's need for that evidence against, (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that the presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). A trial court's ruling concerning whether to exclude evidence under Rule 403 of the Texas Rules of Evidence is measured by an abuse of discretion standard and will not be reversed if the ruling is within the zone of reasonable disagreement. *Andrade,* 246 S.W.3d at 227.

**2. Analysis**

Here, appellant complains that the only disputed issue of consequence in this case was the identity of the perpetrator and the "bloody, gory photographs did not make the identification of appellant any more or less probable."   He also argues that there was ample oral testimony about the amount of blood found at the scene, adding "little to the testimony otherwise before the jury . . . ."   Appellant also indicates that it would be impossible for a jury not to be affected by the images because the attack was "undeniably brutal."

Though gruesome, the photographs are probative of the full extent of the internal and external injuries inflicted upon Ms. Vaughns.   A photograph is not inadmissible merely because it reflects the reality of the brutal crime committed.   *Williams v. State*, 301 S.W.3d 675, 692–93 (Tex. Crim. App. 2009); *Desormeaux IV v. State*, 362 S.W.3d 233, 237 (Tex. App.—Beaumont 2012, no pet.).   With respect to the photographs of Ms. Vaughns' injuries, they show the nature and extent of her injuries.   *See Williams,* 301 S.W.3d at 693; *see also Salazar v. State*, 38 S.W.3d 141, 151–52 (Tex. Crim. App. 2001).

Appellant relies on *Erazo v. State*, 144 S.W.3d 487 (Tex. Crim. App. 2004). There, the court concluded that the autopsy photographs of the victim's unborn child were not helpful to the jury in assessing punishment for the victim's death and were more unfairly prejudicial than probative.   *Id.* at 494–95.   The photographs here are of the victim named in the indictment and depict her injuries.   *Williams*, 301 S.W.3d at 692. "They portrayed no more than the gruesomeness inflicted by appellant."   *Id.*   We find no abuse of discretion in admitting the photographs of Ms. Vaughns.

Similarly, with respect to the photos of the crime scene, we also find no abuse of discretion with respect to their admission. The photos of the scene were necessary to show location and the nature and brutality of the offense. Appellant's first issue is overruled.

## B.  Admission of Testimony Regarding Disposition of Property

By issue two, appellant argues that the trial court erred in allowing hearsay testimony with respect to the disposition of Ms. Vaughns' property in the event of her death. Officer Jefferson-Simon testified that she had been told that upon Ms. Vaughns' death, her property would be willed to appellant. The same testimony was elicited from Bell without objection.

### 1.  Standard of Review and Applicable Law

A trial court's ruling on the admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). We consider the ruling in light of what was before the trial court at the time the ruling was made, and uphold the trial court's judgment if it lies within the zone of reasonable disagreement. *Id.*

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. TEX. R. EVID. 801.

### 2.  Analysis

Sergeant Jefferson-Simon testified: "I was told that upon Ms. Vaughns' death her property would be willed and go to her grandson, Horace Dempsey." Both appellant and

Ms. Vaughns testified that this was not the case. Bell testified similarly to Sergeant Jefferson-Simon that appellant would inherit the house and cars. The statement was not offered for the truth because later testimony by the State's own witness, Ms. Vaughns, was that she had not planned to give her grandson the property. In other words, what Jefferson-Simon had been told was not true. We hold that it was not hearsay.

Regardless, even if the testimony was hearsay, we find that it was harmless. Erroneous admission of hearsay evidence, being a violation of an evidentiary rule, is non-constitutional error governed by the harmless error rule in Texas Rule of Appellate Procedure 44.2(b). *Yanez v. State*, 199 S.W.3d 293, 308 (Tex. App.—Corpus Christi 2006, no pet.); non-constitutional error is reversible error only if it affects the substantial rights of the party injured by the error. *Id.* A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

In its assessment, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir doir, if applicable. *Id.* Whether the State

8

emphasized the error can be a factor. *Id.* at 356. Here, we have considered the record as a whole, noted that the same testimony was elicited in Bell's testimony and was not objected to, and conclude that the admission of the officer's statement, even if erroneous, did not affect appellant's substantial rights. Any error in admitting evidence is cured when the same evidence comes in elsewhere without objection. *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999). We overrule issue two.

### III. CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of August, 2012.