NUMBER 13-04-077-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MICHAEL ARAIZA SALINAS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 404th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 Appellant, Michael Araiza Salinas, pleaded "guilty" to unlawful possession of a
firearm by a felon (1) and "not guilty" to murder. (2) A jury rejected his self-defense theory and
found him guilty of murder. The trial court sentenced him to ten years imprisonment on the
firearm charge and twenty-five years imprisonment on the murder charge, to be served
concurrently. In four issues, appellant contends (1) the evidence is legally and factually
insufficient to support his murder conviction and the jury's rejection of his self-defense
claim, (2) the trial court improperly commented on the weight of the evidence, and (3) the
trial court erred in refusing to submit a jury charge on manslaughter. We affirm.

Background 


 Late in the evening of May 30, 2003, appellant drove to South Padre Island with
three friends, Rachel Garcia, Lydia Trevino, and Chris Garcia. They arrived sometime
around midnight, drove to a beach "access point," and began drinking. Chris Garcia
testified that at some point, he began "rapping" with a group of other individuals, who were
also drinking and "hanging out" at the access point. Appellant and his friends are from
Harlingen, Texas; the other group was from the neighboring town of San Benito. Although
some of the rapping involved some negative comments, Garcia testified that it concluded
with handshakes and the San Benito group left. A short while later, appellant's group left
the beach and drove to a Circle K to use the bathroom. At the Circle K, they again
encountered the San Benito group. Garcia testified he briefly exchanged words with one
of the men (3) and felt that the man "wanted to start problems." The San Benito group was
in two vehicles, with five or six men in each vehicle. The San Benito group invited
appellant's group to follow them to a party. Appellant, who was driving, followed one of the
vehicles (a black vehicle), with the second (a green Camaro) following appellant. After a
few minutes, the Camaro passed appellant and pulled up to the black vehicle; the two
vehicles briefly blocked the road and the parties appeared to exchange information. The
black vehicle then sped off. Appellant's group began discussing whether they should try
to find the party or return home. Appellant turned down a street and pulled into a driveway
to discuss what they were going to do.

 Although the witnesses' testimony differed in some respects, much of what occurred
is not in dispute. The Camaro pulled in behind appellant's vehicle. Four or five men got
out and approached appellant's vehicle. Garcia, seated in the back seat behind appellant,
testified that he rolled down the back window and asked where the party was; one of the
men asked if he needed directions and then struck him in the face. Appellant testified that
one of the men (Orlando Garza) began hitting and choking him. Appellant testified that he
was "real scared" and was thinking, "this guy is going to kill me." (4) Appellant pulled a gun
that he was carrying in his pants pocket and fired twice, shooting the victim, Orlando
Garza. Appellant then put the vehicle in reverse, hitting the vehicle behind him, and pulled
forward and back a couple of times. Appellant managed to get back on the road and drove
away. The police stopped appellant's vehicle in Port Isabel, and he was arrested. After
being advised of his rights, appellant gave a written statement, which provides, in part:

When one of those guys started hitting my friend in the back seat, the whole
argument was because we were from Harlingen and they were from San
Benito. One of them came to my side, grabbed my shirt and started hitting
me and that's when I reached for the gun and fired two rounds. I then
reversed and we left. 


 On cross-examination, appellant admitted his statement did not include anything
about being choked at the time of the shooting because he "forgot to put it in."

Standard of Review and Applicable Law 


 In his first two issues, appellant contends the evidence is legally and factually
insufficient to support the jury's rejection of his self-defense claim. 

 In reviewing a challenge to the legal sufficiency of the evidence to support the
rejection of a self-defense claim, we view the evidence in the light most favorable to the
prosecution to determine if any rational trier of fact would have found beyond a
reasonable doubt the essential elements of the offense and against the appellant's
self-defense claim. (5) When a defendant challenges the factual sufficiency of the rejection
of a defense, we must review all of the evidence in a neutral light and ask whether the
State's evidence, taken alone, is too weak to support the finding and whether the proof
of guilt, although adequate if taken alone, is against the great weight and preponderance. (6) 
In a factual sufficiency review, we are to afford "due deference" to a jury's determinations. (7) 
In conducting these reviews, we bear in mind that the fact finder may draw reasonable
inferences, is the sole judge of the weight of the evidence and credibility of the witnesses,
and may accept or reject any or all of the evidence produced by the parties. (8) 

 A criminal defendant bears the burden of production with defenses, requiring him
to raise evidence that would support the defense before he is entitled to it. (9) However,
once the defense is raised, the State bears the burden of persuasion to disprove the
defense. (10) The burden of persuasion is not one that requires the production of evidence;
rather, it requires only that the State prove its case beyond a reasonable doubt. (11) The
defense is a fact issue to be determined by the jury, which is free to accept or reject it. (12) 
When a jury finds the defendant guilty, there is an implicit finding against the defensive
theory. (13)

 The penal code defines murder as intentionally or knowingly causing the death of
an individual. (14) A person commits the offense of murder under section 19.02(b)(2) if he
intends to cause serious bodily injury and commits an act clearly dangerous to human life
that causes the death of an individual. (15) "Serious bodily injury" is bodily injury that creates
a substantial risk of death or causes death, serious permanent disfigurement, or
protracted loss or impairment of the function of any "bodily member or organ." (16) Culpable
mental state is generally proven through circumstantial evidence. (17)

 Self-defense serves as a justification excluding criminal responsibility for otherwise
criminal behavior. (18) A person is justified in using deadly force against another when and
to the degree he reasonably believes the force is immediately necessary to protect himself
against the other's use or attempted use of unlawful force, if a reasonable person in the
actor's situation would not have retreated, and when and to the degree that he reasonably
believes the deadly force is immediately necessary to protect himself against the other's
use or attempted use of unlawful deadly force, or to prevent the other's imminent
commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault,
robbery, or aggravated robbery. (19) 

 We turn to a discussion of testimony and evidence pertinent to appellant's claim
of self-defense. 

Sufficiency of Evidence


 Appellant argues that the evidence is legally insufficient because "there is no
evidence of intent" and "[t]he evidence tended to show that [appellant] pointed the gun out
the window and fired it without looking." Appellant also argues that the evidence is
factually insufficient because the San Benito group "trapped [appellant] and the girls in
their car" and "threatened the girls, who felt scared." Appellant argues that appellant could
not simply have driven away because "they were effectively trapped."

 By appellant's own testimony, while Garza was swinging at him, appellant pulled
out the gun "pretty quick," cocked it, stuck it out the window, and fired twice in Garza's
direction with his eyes closed. Although appellant testified that he "didn't want to shoot
[Garza]," it "happened fast." Appellant testified as follows:

[Appellant]: . . . He was trying to open the door, and well, he had his hands
right here, I had my hands on his so like trying to pull back pressure and
when I let go of his hands to get the gun, I mean, there was a lot more
pressure now, took out the gun and I cocked it back, you know I did it pretty
quick, cocked it back, I faced it like that as I was doing it, I don't know at what
point, he backed up real quick. It was almost too late. I had like I was
already squeezing the trigger.


[Defense counsel]: He backed up and were you shooting at the same time?


[Appellant]: The same time.


[Defense counsel]: Okay. Did you look at him when you shot?


[Appellant]: No, sir. I looked this way, sir. The car is this way, I stuck it out
there like this and I went like that. I know I closed, like, my eyes and pulled
the trigger two times. 


 On cross-examination, appellant testified he did not try to drive away before the
shooting because he "couldn't go back or front." When asked why he did not try shooting
the gun in the air, appellant responded that he did not because he was inside the car. 
According to appellant, 

[Appellant]: He [Garza] was choking me, hitting me, I was scared and I really
did not know what to do so I did not want to use the gun. If I wanted to use
the gun and shoot somebody I would have shot all the bullets that were in
the gun, sir, and I would have just shot anybody, but it happened to be the
one that was on me, the one that was choking me, hitting me, is the one that
got hit. I could have easily shot the one that was hitting Chris. They were
practically right here. All I had to do was shoot like that, sir. 


Appellant testified that after he shot Garza, he "put it in reverse," "hit the car in the back,"
"did whatever [he] had to do to try to get out," and "managed to get on the road."

 Appellant argues that "there is no evidence of intent" and that "at best," he "pointed
a gun out the window without looking and fired." We disagree. Murder is a "result of
conduct" offense, which means that the culpable mental state relates to the result of the
conduct, i.e., the causing of the death. (20) Intent may be inferred from the actions or conduct
of the defendant. (21) Intent may also be ascertained or inferred from the means used and
the wounds inflicted. (22) If a deadly weapon is used in a deadly manner, the inference is
almost conclusive that the defendant intended to kill. (23) 

 At trial, appellant demonstrated how he pulled the gun, pointed it out the window,
and fired twice "blindly" in Garza's direction at a range of about two feet. Dewitt Davenport,
a pathologist who performed the autopsy on Garza, testified that Garza was shot twice,
once in the abdomen and once in the chest, at a range of one to two feet. He also testified
that firing a weapon at someone, shooting the victim in the chest, is an act clearly
dangerous to human life. Detective Sandoval, one of the investigating police officers,
testified that there was no evidence or indication that Garza or any of the others in the San
Benito group had any weapons. 

 Viewing the evidence under the appropriate standards, we hold that a rational jury
could have found beyond a reasonable doubt against appellant on the self-defense issue. 
We hold the evidence is legally and factually sufficient to support the jury's finding beyond
a reasonable doubt that appellant either knowingly and intentionally caused Garza's death
or intended to cause serious bodily injury and caused his death. We overrule appellant's
first two issues. 

Trial Court's Comment 


 In his third issue, appellant contends the trial court improperly commented on the
weight of the evidence. During the State's examination of Garcia, Garcia was asked about
the "rapping" that occurred at the beach. The following exchange occurred:

Q [State]: Now, just so the jury understands, I don't mean to put you on the
spot. Can you rap a little bit for us just so we can have an idea what it is.


[Defense counsel]: Your Honor, I object to relevancy.


[State]: It's-- 


[Court]: It's conduct, what's the fact that--there's testimony that this is what
might have precipitated the conduct of the defendant so I'll allow it if he
can. (24)


 Appellant concedes that his counsel did not object to the court's comment, obtain
a ruling, request an instruction to disregard, or request a mistrial. (25) However, appellant
contends that the error is "fundamental" because "the judge's comment effectively directed
a verdict of guilty by telling the jury that the defendant had engaged in the conduct
preferred in the charging document." 

 Article 38.05 of the code of criminal procedure prohibits a judge from commenting
on the weight of the evidence. (26) The trial court should never "make any remark calculated
to convey to the jury [its] opinion of the case." (27) The trial court's comment constitutes
reversible error if such comment is either reasonably calculated to benefit the State or to
prejudice the defendant's right to a fair and impartial trial. (28) To determine whether the
comment is either reasonably calculated to benefit the State or to prejudice the defendant,
we must first examine whether the trial court's statement was material to the case. (29) An
issue is material if the jury had the same issue before it. (30) 

 We agree with the State that the trial court's statement does not constitute an
improper comment on the evidence and thus, cannot constitute fundamental error. The
trial court's statement was a brief explanation of its ruling allowing Garcia, the witness, to
demonstrate "rapping" for the jury's benefit. Appellant complains that the court's comment
referring to "the conduct of the defendant" was a comment on his guilt. However, the
"conduct of the defendant"-- shooting Garza-- was not at issue. Appellant's defense was
not that he did not engage in the "conduct," but that he did so in self-defense. The issue
of whether appellant shot Garza was not material to the case because it was not in dispute. 
We hold that the trial court's statement did not constitute a comment on the weight of the
evidence, was not in error, and thus cannot constitute fundamental error. We overrule
appellant's third issue.

Lesser-Included Offense 


 In his fourth issue, appellant contends the trial court erred in refusing his request for 
a charge on the lesser-included offense of manslaughter.

 We use a two-part test to determine if a lesser-included offense instruction should
be given. (31) A defendant is entitled to a charge on a lesser offense if (1) the lesser offense
is included within the proof necessary to establish the offense charged, and (2) there is
some evidence that would permit the jury rationally to find that, if the defendant is guilty,
he or she is guilty only of the lesser offense. (32) In other words, there must be some
evidence from which a rational jury could acquit the defendant of the greater offense while
convicting him of the lesser-included offense. (33) The evidence must establish the
lesser-included offense as a valid rational alternative to the charged offense. (34) 

 The State concedes that manslaughter may be a lesser-included offense of
murder. (35) We must thus determine if there is some evidence in the record that would
permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser
included offense of manslaughter.

 A conviction for manslaughter requires a finding that the defendant recklessly
caused the decedent's death. (36) "A person acts recklessly, or is reckless, with respect to
. . . the result of his conduct when he is aware of but consciously disregards a substantial
and unjustifiable risk that . . . the result will occur." (37) A manslaughter charge is required if
there is any evidence from which a jury could conclude the defendant did not intentionally
or knowingly kill an individual, but consciously disregarded a substantial and unjustifiable
risk that the result would occur. (38) 

 Appellant argues that

In [this case], the evidence could have supported the conclusion that the
defendant was aware of but consciously disregarded a substantial but
unjustifiable risk that the result (shooting someone) would occur. The
evidence was that perhaps Salinas pointed the gun out window [sic] and fired
it, being attacked, without looking, when people were present. Normally one
does not get to fire a gun into a mass of people. But the question here was
whether the risk of doing so was justifiable or not. Would a reasonable
person in Salinas' situation have felt that his life was in danger so as to be
able to respond with deadly force? The trial judge should have instructed the
jury on recklessness. 


 We disagree. Appellant testified that he decided he should use his gun when he
was being choked:

. . . I was thinking they are going to get me out of the car and something was
going to happen and for him to kill me or choke me knowing that I have a gun
in my pocket if I were to die and police discovered I had a gun in my pocket,
I mean, a lot of people would think, well, why didn't he use it. 


 The evidence clearly establishes that appellant's intentional act of shooting at
Garza, allegedly to protect himself, went beyond reckless conduct. One cannot
accidentally or recklessly act in self-defense. (39) Having reviewed the record, we are unable
to find any evidence that would permit a rational jury to find that, if guilty, appellant was
only guilty of manslaughter. We hold the trial court did not err in refusing appellant's
request for a charge on the lesser-included offense of manslaughter. We overrule
appellant's fourth issue.

 We AFFIRM the trial court's judgment. 



 

 LINDA REYNA YAÑEZ,

 Justice







Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 14th day of June, 2007.

1. See Tex. Pen. Code Ann. § 46.04 (Vernon Supp. 2006).
2. See Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). 
3. The man was later identified as Orlando Garza, the murder victim.
4. Appellant testified that he was scared because he knew there were people who had threatened to
kill him. Sometime earlier, appellant had received a letter listing him as one of four people, the first two of
whom had already been killed. Approximately a month before the South Padre incident, appellant began
carrying a gun after a group of men came to his house and vandalized a car. 
5. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). 
6. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); see Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). 
7. Marshall, 210 S.W.3d at 625. 
8. Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003); Johnson v. State, 959 S.W.2d 284,
287 (Tex. App.-Dallas 1997, pet. ref'd). 
9. Zuliani, 97 S.W.3d at 594. 
10. Id. 
11. Id. 
12. Saxton, 804 S.W.2d at 913-14.
13. Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d at 914.
14. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003).
15. Id. § 19.02(b)(2). 
16. Id. § 1.07(a)(46) (Vernon Supp. 2006).
17. See Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). 
18. Tex. Pen. Code Ann. § 9.31 (Vernon 2003). 
19. Id. § 9.32(a) (Vernon 2003).
20. Schroeder v. State, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). 
21. Yañez v. State, 187 S.W.3d 724, 740-41 (Tex. App.--Corpus Christi 2006, pet. ref'd). 
22. Id. at 743. 
23. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).
24. The witness, Garcia, did not "rap" for the jury. 
25. See Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Tex. R. App. P. 33.1. 
26. Tex . Code Crim. Proc. Ann. art. 38.05 (Vernon 1979).
27. Id. 
28. Clark v. State, 878 S.W.2d 224, 226 (Tex. App.-Dallas 1994, no pet.). 
29. Id. 
30. Id
31. Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Feldman v.State, 71 S.W.3d 738,
750 (Tex. Crim. App. 2002).
32. Salinas 163 S.W.3d at 741; Feldman, 71 S.W.3d at 750. 
33. Salinas 163 S.W.3d at 741; Feldman, 71 S.W.3d at 750.
34. Feldman, 71 S.W.3d at 750.
35. See Tex. Code Crim. Proc. Ann. art. 37.09(3) (Vernon 2006); Schroeder, 123 S.W.3d at 400.
36. Tex. Pen. Code Ann. § 19.04 (Vernon 2003).
37. Id. § 6.03(c) (Vernon 2003). 
38. Shanklin v. State, 190 S.W.3d 154, 159 (Tex. App.-Houston [1st Dist.] 2005, pet. dism'd). 
39. Avila v. State, 954 S.W.2d 830, 843 (Tex. App.-El Paso 1997, pet. ref'd); Johnson v. State, 915
S.W.2d 653, 659 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd); Mock v. State, 848 S.W.2d 215, 219 (Tex.
App.-El Paso 1992, pet. ref'd).