

**NUMBER 13-05-00423-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**KIMBERLY CASTILLO,**                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

**On appeal from the 28th District Court of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Chief Justice Valdez**

A jury convicted appellant Kimberly Castillo of capital murder of a child. *See* TEX. PEN. CODE ANN. § 19.03(a)(8) (Vernon Supp. 2007). The trial court assessed the automatic life sentence. *Id*. § 12.31(a). By two issues, appellant asserts that the trial court erred by (1) failing to suppress her videotaped confession, and (2) by denying her request for an instruction on the lesser-included offenses of murder and manslaughter. We affirm.

## I. BACKGROUND

On October 4, 2004, the Nueces County police department responded to a report of a child unconscious and not breathing. Officers Jerry Neal and Bob La Rock were the first responders on the scene; paramedics arrived minutes later.

Officer Neal testified that once he found appellant's apartment, he banged on the door for approximately two minutes but received no response. Minutes later, appellant arrived and unlocked the door; paramedics rushed in and found twenty-month old J.G. lying face up on a bed. Paramedic Alonzo Yanez testified that J.G. was not breathing and had no pulse; emergency life-saving measures were then initiated. Yanez further testified that once J.G's clothes were removed, he noticed bruises and bite marks all over his body. Officer Neal also testified that he noticed what seemed to be bite marks all over J.G.'s body. J.G. was rushed to Driscoll Children's Hospital.

Critical care physician John Maher, M.D., testified that when J.G. was admitted he was in complete cardiac arrest and was receiving artificial life support. He added that because J.G. seemed otherwise healthy, they began to look into "non-accidental trauma." He concluded that the cause of J.G's injuries was asphyxiation, which caused his lungs to shut down and his heart to stop beating. He added that the severity of J.G.'s injuries indicated that he must have been held down by the neck for a period of five or six minutes. He further testified that J.G. was covered with what seemed to be human bite marks. Dr. Maher further stated that Driscoll personnel were never able to revive J.G. to where he could breathe on his own and that J.G. was declared brain dead on October 7, 2004.

Intensive care specialist David Ryan, M.D., also treated J.G. Dr. Ryan testified that the bite marks and bruises all over J.G.'s body were clear evidence of abuse. He added

2

that x-rays showed J.G. had what appeared to be two severe rib fractures. He further testified that J.G.'s injuries indicated that persistent pressure was applied to his neck for five or six minutes, and J.G. must have struggled for at least two minutes.

Nueces County Medical Examiner Ray Fernandez, M.D., performed an autopsy on J.G.'s body on October 8, 2004. Dr. Fernandez first testified that he found hemorrhaging in the muscles on the side of J.G's neck which was consistent with a right handed person squeezing it. He further testified that J.G. had cerebral edema–swelling of the brain– which would have required at least four to five minutes of persistent pressure applied to J.G's neck. He concluded that the cause of J.G's death was anoxic brain injury due to manual strangulation.

Corpus Christi Police Department's child abuse investigator Sergeant Michael Hess, took appellant's statement on two separate occasions. The first occurred at the hospital, where appellant explained to Sergeant Hess that she heard J.G. and her daughter jumping on the bed ten minutes before she found J.G. on his stomach. She rolled him over and saw that his lips were blue and that he was not breathing. She then went to a pay phone, called 911, and stayed on the phone until the ambulance arrived.

The second interview occurred on October 6, 2004. This interview was held at a local Corpus Christi police station and was videotaped. The interview lasted approximately one and half hours. Sergeant Hess began the interview by advising appellant of her *Miranda* rights; appellant then read the rights to herself, indicated that she understood her rights, and signed a voluntary waiver of those rights. Although appellant initially denied knowing what happened to J.G., she eventually confessed to treating J.G. badly, to biting him whenever he made her upset, and to choking him on October 4, 2004. The

3

videotaped interview was admitted into evidence.

After a jury trial, appellant was found guilty of capital murder. The trial court assessed the automatic life sentence. This appeal ensued.

## II. Videotaped Confession

As her first issue, appellant contends the trial court erred in failing to suppress her videotaped confession because Sergeant Hess (1) made false statements, (2) was threatening and coercive, and (3) made improper promises. As an alternative argument, appellant contends her confession was obtained as a result of an illegal arrest. We disagree.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We will apply a deferential review of the trial court's determination of the historical facts and a de novo review of the law's application to those facts. *Carmouche*, 10 S.W.3d at 327. When the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002).

### B. Voluntary Statement

#### 1. Applicable Law

A statement made by the accused may be used in evidence against him if it appears that it was freely and voluntarily made without compulsion or persuasion. *See* TEX. CODE

4

CRIM. PROC. ANN. art. 38.21 (Vernon 2005); *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999). Whether the accused's statements are voluntary is determined from all the circumstances surrounding the making of the statement. *See Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (citing *Penry v. State*, 903 S.W.2d 715, 748 (Tex. Crim. App. 1995)). A statement is not voluntary if there is "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *see Denoso v. State*, 156 S.W.3d 166, 175 (Tex. Crim. App.–Corpus Christi 2005, pet. ref'd).

## 2. False Statements

Appellant first argues that her statement was not voluntary because, during the videotaped interview, Sergeant Hess represented to appellant that he had spoken with a dentist about measuring the bite marks that were found on J.G's body. At trial, however, Sergeant Hess acknowledged that he had made up the story in hopes that appellant would think he knew more about the case than he actually did. He added that he had only spoken to the nurses about the bite marks but planned to talk to the doctors as well.

"Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). The ultimate question is whether the suspect's will was overborne. *Id*. Moreover, "of the numerous types of police deception, a misrepresentation relating to an accused's connection to the crime is the least likely to render a confession involuntary." *Green v. State*, 934 S.W.2d 92, 100 (Tex. Crim.

5

App. 1996). Sergeant Hess's misrepresentation that he had spoken to a dentist about the bite marks clearly falls into this category. Any deception such as alleged by appellant directly concerned her connection to the crime and was not calculated to compel a false statement. *See Rodriguez v. State*, 934 S.W.2d 881, 890-91 (Tex. App.–Waco 1999, no pet.) (involuntary confession not found where officer falsely told defendant that victim had implicated defendant on victim's deathbed); *Mason v. State*, 116 S.W.3d 248, 259 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd) (involuntary confession not found where officer falsely told defendant that medical examination showed penetration of victim).

### 3. Coercive Statements

Appellant next claims that her statement was not voluntary because Sergeant Hess was threatening and coercive. Specifically, appellant contends that Sergeant Hess used undue "psychological pressure" by reading her mother's statement,[1] asking if she believed in God, and asking whether she thought that she had an angel watching over her. She also contends that she was coerced by Sergeant Hess's tone of voice.

The video demonstrates that appellant confessed to choking J.G. approximately seventy-six minutes after the interview started. During the interview, Sergeant Hess never yelled at appellant, never physically threatened her, and never made an improper statement of the law. Considering the allegedly improper statements made by Sergeant Hess in light of the surrounding circumstances, none of the statements were of such a coercive nature as to make appellant's confession involuntary. Although it is clear that Sergeant Hess used religion to make appellant feel guilty or remorseful, none of these

---

[1] Appellant's mother gave Sergeant Hess a written statement where she mentioned that it may be possible that appellant killed J.G.

statements was so coercive that appellant's free will would have been overwhelmed.

### 4. Promises

Appellant also contends that her confession was not voluntary because she was influenced by promises made to her by Sergeant Hess. Texas law prohibits the use of any confession given by a defendant under the influence of an improper promise. The Texas Court of Criminal Appeals has summarized the rule as including four requirements. "The promise must be: (1) of some benefit to the defendant, (2) positive, (3) made or sanctioned by a person in authority, and (4) of such character as would be likely to influence the defendant to speak untruthfully." *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991); *see Harty v. State*, 229 S.W.3d 849, 856 (Tex. App.–Texarkana 2007, pet. ref'd). To determine whether a promise is likely to influence the defendant to speak untruthfully, "an appellate court must look to whether the circumstances of the promise made the defendant 'inclined to admit a crime he had not committed.'" *Sossamon*, 816 S.W.2d at 345 (quoting *Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964)).

During the interview, Sergeant Hess can be heard repeatedly telling appellant that if she told the truth he could help her. Although he never elaborates as to how he can help her, he does on one occasion mention that "[he] can fix a lot of this stuff" and also that if she told him the truth he may be able to call the doctors so that "maybe they can fix something." These are mere general statements which clearly do not rise to a level of an unequivocal promise. At no point during the interview does Sergeant Hess induce appellant to confess by implicitly or explicitly suggesting a deal, bargain, agreement, exchange, or contingency. *See Chambers v. State*, 866 S.W.2d 9, 20 (Tex. Crim. App.

7

1993). Appellant has failed to demonstrate that the party in authority positively and unequivocally promised a benefit in return for a confession. *Id*.; *see Ramirez v. State*, 76 S.W.3d 121, 126-27 (Tex. App.– Houston [14th Dist.] 2002, pet. ref'd).

Based on the foregoing, we conclude that appellant's statement was freely and voluntarily made, therefore, the trial court properly admitted appellant's confession into evidence.

### C. Illegal Arrest

Appellant next argues that her confession was obtained as a result of an unlawful arrest. A person is not unlawfully arrested if she is not placed under restraint or taken into custody. *Chambers*, 866 S.W.2d at 19. An arrest is effected when a person's liberty of movement is restricted or restrained. *Id*. A person is "seized" under the Fourth Amendment only if, under all of the circumstances surrounding the seizure, a reasonable person would have believed that he or she was not free to leave. *See Florida v. Royer*, 460 U.S. 491, 502 (1983); *Chambers*, 866 S.W.2d at 19.

Appellant met with Sergeant Hess two days after J.G. was taken to the hospital. The record shows that she arrived with her husband Alex, she was not handcuffed, she was admonished of her *Miranda* rights, and on at least two occasions she was told that the police had no suspects. On appeal, appellant makes much of the fact that on two separate occasions she commented that she "want[ed] to go see her baby" but, according to appellant, Sergeant Hess refused to let her go. Although the video demonstrates that appellant did comment that she wanted to see her baby, at no point does she press the issue. In fact, Sergeant Hess tells appellant that he will personally drive her to the hospital,

but he urges her to tell him the truth before he does so. Further, the record shows that appellant was admonished of her right to terminate the interview at any time, but she chose not to do so. Indeed, after the seventy minute interview, appellant left the police station without hindrance. The record simply fails to support appellant's contention that her confession was obtained as a result of an unlawful arrest. *See Chambers*, 866 S.W.2d at 19. Accordingly, appellant's first issue is overruled.

## III. LESSER-INCLUDED OFFENSE

As her second issue, appellant contends that the trial court erred in refusing to instruct the jury on the lesser-included offenses of murder and manslaughter.

### A. Applicable Law

A defendant is entitled to an instruction on a lesser-included offense if (1) the lesser offense is a lesser-included offense of the charged offense; and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006).

Under prong one, we compare the elements of the charged offense, as modified by the indictment, with elements of the lesser offense that might be added to the jury charge. *Id*. "We compare the elements of both offenses to determine whether, in proving the offense as charged, the State necessarily had to prove all the elements of the lesser offense, plus something more." *Id*. at 189 & n.7 (applying article 37.09 of the Texas Code of Criminal Procedure). If prong one is met, we then consider, under prong two, whether there is some evidence from which a jury rationally could find that, if defendant is guilty, he

is guilty only of the lesser offense. *Id* at 189. At this step of the analysis, "the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).

Here, the elements of capital murder, as alleged in the indictment, are that (1) the defendant, (2) intentionally or knowingly, (3) caused the death of J.G., (4) by strangling him with her hand or hands or by other means unknown to the grand jury, and (5) J.G. was under six years of age. *See* TEX. PEN. CODE ANN. § 19.03(a)(8).

## B. Murder as a Lesser Included Offense

The elements of the lesser offense of murder are (1) the defendant, (2) intentionally or knowingly, (3) causes the death of an individual. *Id*. § 19.02(b)(1) (Vernon 2003). In comparing the elements of capital murder as alleged in the State's indictment with the elements of murder, the only distinction to be made is proof of the additional fact that the victim is under six years of age. As recognized by the court of criminal appeals, *see Mckinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006), and because the State concedes as much here on appeal, we hold that murder is a lesser included offense of capital murder. Appellant has satisfied the first prong of the test. We next determine whether there is evidence showing that appellant, if guilty, is guilty only of the offense of murder. *See Hall*, 225 S.W.3d at 536.

In conclusory fashion, appellant argues that she was entitled to a murder charge because "the State's evidence shows appellant acted knowingly when she grabbed the child by the neck with one hand and applied pressure." Appellant concludes that because "there was no evidence to the contrary," a "rational jury could have concluded that

10

appellant was only guilty of murder." We read appellant's argument to mean that because the State's evidence showed appellant acted knowingly rather than intentionally, the trial court should have instructed the jury on the lesser-included offense of murder. We disagree.

As previously noted, the State's indictment reads that appellant "intentionally or knowingly caused the death of . . . J.G, . . . and that J.G. was then and there an individual under six years of age." By statute, one may be convicted of capital murder if she "commits murder as defined under section 19.02(b)(1) [of the Penal Code] and . . . murders an individual under six years of age." TEX. PEN. CODE ANN. § 19.03(a)(8). One commits murder under section 19.02(b)(1) if she "intentionally *or* knowingly causes the death of an individual." *Id*. § 19.02(b)(1) (emphasis added). It follows then, that a person need not "intentionally" cause death to be found guilty of murder; it suffices if a person acted "knowingly." Logically, to the extent that a knowing (as opposed to an intentional) mens rea is sufficient, and if the decedent is also under six years of age, the accused has performed acts sufficient to satisfy the elements of capital murder. *See Darnes v. State*, 118 S.W.3d 916, 920 (Tex. App.–Amarillo 2003, pet. ref'd).

Again, the State indicted appellant for intentionally *or* knowingly causing the death of an individual under six. Moreover, the trial court charged the jury in a similar, disjunctive fashion. So, the mere fact that appellant may have acted in a knowingly rather than intentional fashion does not insulate appellant from being convicted of capital murder. As previously illustrated, she could be found guilty of the charge if the State proved, and the fact-finder concluded, that she acted with a knowing state of mind. *See id*. at 921. Accordingly, we conclude that there is no evidence that would permit a rational jury to find

11

that if appellant is guilty, she is guilty only of murder. *See Hall*, 225 S.W.3d at 536 (stating there must be some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty *only* of the lesser-included offense).

### C. Manslaughter as a Lesser Included Offense

A person commits the offense of manslaughter if he or she recklessly causes the death of an individual. TEX. PEN. CODE ANN. § 19.04(a) (Vernon 2003). We have previously recognized that involuntary manslaughter is a lesser-included offense of capital murder, we therefore conclude that the first part of the test for determining whether a defendant is entitled to an instruction on a lesser offense is satisfied. *see Yanez v. State*, 187 S.W.3d 724, 740 (Tex. App.–Corpus Christi 2006, pet. ref'd) (citing *Adanandus v. State*, 866 S.W.2d 210, 232 n.21 (Tex. Crim. App. 1993)). We now turn to the second part of the test. *See Hall*, 225 S.W.3d at 536.

Appellant asserts that the evidence shows that appellant never intentionally or knowingly caused J.G's death. She adds, "what it does show is that appellant tried to stop the child from screaming and in doing so applied too much pressure with one hand on the child's neck." She concludes that "this was an act of recklessness and the [trial] court should have allowed the requested [manslaughter] charge."

When a person recklessly causes the death of an individual, the offense is manslaughter. TEX. PEN. CODE ANN. § 19.04(a). A person acts recklessly with respect to the result of his or her conduct when he or she is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *See* TEX. PEN. CODE ANN. § 6.03(c) (Vernon 2003). The risk must be of such a nature and degree that its disregard

12

constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id*. The offense of manslaughter "involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it." *Yanez*, 187 S.W.3d at 741-42 (quoting *Stadt v*. *State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005)). As previously noted, one commits the offense of murder and consequently capital murder if he or she intentionally or knowingly causes the death of an individual. Thus, "the question presented is whether there was some evidence presented at appellant's trial that would permit a rational jury to find that she possessed the culpable mental state of manslaughter rather than the culpable mental state of capital murder." *Id*. at 742. We now turn to the evidence.

Various members of appellant's family testified that she was involved in an acrimonious relationship. They described appellant to be hot tempered, stressed, and always upset at her husband. The couple struggled financially and were constantly fighting.

J.G. was physically abused; appellant would either bite, slap, or pinch J.G's ears whenever he was disobedient or aggressive with the other children. Appellant confessed to treating J.G. badly and that she would treat him differently from her other children. The medical evidence introduced at trial showed that appellant had two fractured ribs, bruised ears, and approximately twenty "adult-like" bite marks throughout his body. Medical testimony indicated that the injury sustained on J.G.'s ears was consistent with having been struck with a hard object and that the fractured ribs could have only resulted from the use of substantial force–either a hard direct blow or extremely hard pressure directly

13

applied to the rib area.

J.G. died as the result of asphyxiation. Expert medical testimony from J.G.'s two treating physicians indicated that steady pressure was applied to J.G.'s neck for a period of four to five minutes with J.G. struggling for a least two minutes. Dr. Fernandez, Nueces County Medical Examiner, testified that hemorrhaging in the muscles on the side of J.G.'s neck was consistent with a right handed person placing their hand on his neck and squeezing it. He added that because J.G. had swelling to the brain, sufficient pressure must have been applied on his neck for at least four to five minutes. He concluded that the cause of J.G.'s death was anoxic brain injury due to manual strangulation.

Intent may be inferred from the actions or conduct of the appellant. *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). Intent may also be ascertained or inferred from the means used and the wounds inflicted. *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981). The severity and nature of J.G's injuries, the fact that persistent pressure had to be applied on his neck for a period of four to five minutes, and the fact that he was subject to prior physical abuse, indicate that appellant intentionally rather than recklessly caused J.G's death. We do not believe a rational jury would disregard such evidence and consider it not to be probative of appellant's intent to murder the child. *See Yanez*, 187 S.W.3d at 743. We conclude there is no evidence in the record that would permit a rational jury to find that if appellant is guilty, she is guilty only of manslaughter. *Id.* Accordingly, we conclude the second part of the test for determining whether a defendant is entitled to an instruction on a lesser offense is not satisfied. *See Hall*, 225 S.W.3d at 536. Appellant's second issue is therefore overruled.

## IV. Conclusion

Having overruled all of appellant's issues on appeal, we affirm the judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 13th day of March, 2008.